## PEOPLE v. SCHARF.

(Supreme Court, Appellate Division, Second Department. June 17, 1915.)

1. CRIMINAL LAW ☞835—INSTRUCTIONS—REFUSAL OF REQUESTS.

It is improper for the court refusing a request to charge, to say, "I decline to charge except as I have stated," since it left the jury in doubt as to whether the request was in harmony with the charge as made.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2017, 2018; Dec. Dig. ☞835.]

2. LARCENY ☞78—INSTRUCTIONS—EVIDENCE.

Where it was in evidence, in a prosecution for larceny of earrings in possession of defendant, that some time after the earrings were pawned defendant sent notes to complainant which he accepted, a requested instruction to find defendant not guilty if there was an agreement at the inception of the transaction that notes should be given for the price, thereby constituting a sale, should have been given.

[Ed. Note.—For other cases, see Larceny, Cent. Dig. § 182; Dec. Dig. ☞78.]

3. CRIMINAL LAW ☞1172—PREJUDICIAL ERROR—REFUSAL OF INSTRUCTIONS.

Where it was doubtful from the court's charge whether the jury were justified in finding that defendant was not guilty because of the giving of notes for the price of earrings converted while in his possession and there was evidence which might bear that inference, and the court refused a specific request that the jury might so find, stating, "I decline to charge except as I stated," it was prejudicial error to then refuse a further request that the jury was justified in making such inference.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3128, 3154–3157, 3159–3163, 3169; Dec. Dig. ☞1172.]

Rich, J., dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Kings County County.

William Scharf was convicted of grand larceny in the first degree, and he appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and RICH, JJ.

Luke O'Reilly, of Brooklyn, for appellant.

Ralph E. Hemstreet, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., and Harry G. Anderson, Asst. Dist. Atty., both of Brooklyn, on the brief), for the People.

MILLS, J. This is an appeal from a judgment of conviction of the defendant of the crime of grand larceny in the first degree after a trial before a county judge and a jury under an indictment charging that crime. The sentence was imprisonment in the State Prison at Sing Sing under an indeterminate sentence, the maximum of such imprisonment to be 9 years and 6 months and the minimum thereof 5 years. The defendant had not previously been convicted.

The indictment contains two counts, the first charging that on the 2d of April, 1914, in the county of Kings, the defendant, having in his possession as bailee of Harry Spievack (the complainant) two pairs of diamond earrings of the value of $1,218, appropriated the same to his own use, with the intent to deprive the owner thereof, and thereby committed the crime of grand larceny in the first degree; and the second count charging the same offense in the so-called common-law form. The trial was had November 10, 11, 1914. The defendant was defended by counsel apparently of his own employment, but no evidence was introduced in his behalf. The following is a summary of the substance of the evidence in behalf of the people: The complainant was a dealer in jewelry, diamonds, in April, 1914; and on the 2d of that month his nephew, the witness Alperin, brought the defendant to the complainant's house in Manhattan and introduced him as a person desiring to buy a pair of diamond earrings. The defendant asked complainant to give the earrings to him to have them appraised, but the complainant refused, as he did not know him. Thereupon the defendant took the complainant and his nephew to his (defendant's) home in Brooklyn, showed him there a well-appointed house, and told him of his other alleged property, so as to give the impression that he was a person of very considerable means. Thereupon he asked complainant to let him take the two pairs of earrings, which the latter had brought over, so that he, the defendant, might have them appraised and tested. Accordingly the complainant delivered them to the defendant, telling him to have them appraised and to return them to him the next day, which the defendant promised to do; but the complainant failed to take from the defendant any receipt for the same. The market value of the two sets of earrings was $1,218. Defendant did not return them to the complainant at all. He did not appear at the complainant's house the next day, as he had promised he would, but did appear there on April 6th, saying that he had not yet had the articles appraised, but would do so and bring them back to the complainant. The complainant thereafter went repeatedly to defendant's house, but failed to find

or meet him until May 1st, when he chanced to meet him in Manhattan; and defendant then admitted that he had pawned both sets of earrings and sold the pawn tickets. In fact, on April 4th or 6th he pawned one set for $225, and on April 30th the other set for $300. On April 19th, the defendant, by Mrs. Alperin, wife of the complainant's nephew, sent to the complainant certain promissory notes for the price of the earrings, and she delivered them to the complainant. The complainant thereupon gave the notes to the dealers from whom he purchased his goods, and he had at least one of them, for the sum of $300, protested. Nothing was ever paid upon any of the notes. Complainant's nephew, Alperin, was examined as a witness for the people, and corroborated the version of the matter given by the complainant as above set forth, especially as to the original delivery of the articles and as to the defendant's later admission that he had pawned them. The complainant's wife also testified to the original meeting of the parties at the complainant's house, and corroborated her husband in that respect. Several other witnesses testified to various statements by the defendant, admitting, in effect, that he had pawned the two sets of earrings. One witness testified that the defendant asked him and another to say, probably meaning to testify, that they had seen defendant pay the complainant $150, which was untrue. It is plain from the foregoing review that the evidence was amply sufficient to warrant the defendant's conviction.

[1-3] The sole question of substantial error, or indeed of any error to the prejudice of the defendant, presented by the record is that of the ruling of the trial judge in disposing of two certain requests to charge made by defendant's counsel. The following is that part of the record:

"I ask your honor to charge that if there was an arrangement at the inception of this transaction between Scharf and Spievack, by which Scharf was to give certain notes and Spievack was to accept notes in payment of the earrings, Scharf was not then a bailee, and that there was no bailment.

"The Court: There is no such evidence. I decline to charge except as I have already charged.

"Mr. O'Reilly: I take exception to your honor's statement that there is no such evidence and to your honor's refusal to charge as requested. I ask your honor to charge, in view of what your honor has stated, that the jury have the right, if they so find, to draw the conclusion, from the fact that these notes were accepted, were given by Scharf and accepted by Spievack by indorsement, that there was such an arrangement between Spievack and the defendant.

"The Court: I decline to charge except as I have already charged."

I have no doubt that each of those two requests was technically correct and should have been granted. The form of the ruling was objectionable, namely, "I decline to charge except as I have already charged," because that left it to the laymen jurors to determine for themselves whether or not the proposition of the request was in harmony with the charge as made, a task very likely difficult, if not impossible, for them to perform. The proper practice, no doubt, is for the trial judge to pass squarely upon every reasonable request to charge, made without undue repetition, so that the jurors may, at once, realize whether or not proposition tendered be correct.

The form of the ruling was also objectionable because in fact the main charge had not, in precise terms, stated the proposition of the re-

quests. It had, upon the general subject, stated: (1) That the jury should not convict unless it found that the goods were not sold to the defendant, but were given to him only to have them appraised and tested, and then to be returned to the owner by the defendant, unless a sale was then made by the owner to the defendant; and (2) that the jury should not convict, provided the jurors believed that "through certain notes and through argument of counsel, asking your deductions from that data, that certain notes were received, that there was a sale, that the defendant bought from this complaining witness this property"; and (3) "that it makes no difference at all whether these notes were given or not at that subsequent date." These several instructions certainly did not make it clear to the jurors that they might, from the fact that the notes were subsequently given and apparently accepted by the owner and used by him, infer that there had been a sale at first, with the agreement that payment was to be made by means of the notes, or at least that the jurors might entertain a reasonable doubt whether or not the notes were so given and accepted pursuant to an original understanding that they should be accepted as payment, so that there had been originally a real sale.

The matter is further at least technically complicated by the fact that in passing upon the first of the two requests the trial judge declared, "There is no such evidence." It is true that there was no such direct evidence; but I think, as above indicated, the circumstances proven were such that they might raise in the mind of a juror at least a reasonable doubt as to whether the original transaction was not a sale with such an understanding about the notes as above indicated. To my mind, the effect of the several instructions and the rulings upon the two requests above recited was to belittle in the minds of the jurors the fact of the giving and receiving of the notes, and to practically deprive that fact of probative force. The jurors were nowhere instructed that they might consider the facts of the subsequent giving and accepting and using of the notes as evidence tending to establish that there had been an original sale with the then understanding that, if the defendant elected to retain the goods after having them examined, he could do so and give or send to the complainant his (defendant's) notes therefor. Perhaps even that much might, by some minds, be implied from the statement in the charge to the effect that the jury might find the contention of the defendant's counsel that there had been a sale sustained. Certainly, however, that part of the charge left the matter somewhat obscure, so that the defendant was entitled, upon the appropriate request of his counsel made at the close of the charge, to have the jury instructed precisely that they might take the facts proven as to the notes as some evidence that the notes were given pursuant to an agreement made at the original delivery of the goods by the complainant to the defendant, and therefore as evidence that the transaction was really a sale.

The judgment of conviction of the County Court of Kings county should therefore be reversed, and new trial ordered. All concur, except RICH, J., dissenting.